IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| ASHLEY BENNETT, | ) | Civil Action No.    9:19-cv-1515-BHH-BM |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | **COMPLAINT** |
| | ) | **JURY TRIAL DEMANDED** |
| BEAUFORT COUNTY and the | ) | |
| BEAUFORT COUNTY COUNCIL, | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |
| _____ | ) | |

## **INTRODUCTION**

1.      Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* (hereinafter Title VII), to redress the unlawful conduct and actions of the Defendant.

## **PARTIES**

2.      The Plaintiff is a female citizen and former resident of Beaufort County, South Carolina. She currently resides in the State of Texas.

3.      Defendants Beaufort County and the Beaufort County Council (hereinafter "Beaufort") are bodies corporate and politic with authority to sue and be sued located in Beaufort County, South Carolina.  Defendants are employers within the meaning of Title VII.

## **JURISDICTION AND VENUE**

4.      Jurisdiction of this Court arises under 42 U.S.C. § 2000e-2 and 28 U.S.C. §1331 and §1332.

1

5.    Venue is proper under 28 U.S.C. §1391(b) and § 1391(c) as Defendant conducts business within this judicial district and the unlawful employment practices giving rise to this action also occurred in this judicial district.

**CONDITIONS PRECEDENT**

6.    The Plaintiff timely filed an administrative charge with the Equal Employment Opportunity Commission (EEOC), the Notice of Right to Sue was received by the Plaintiff no earlier than April 15, 2019 and this Complaint has been timely filed within ninety days of said receipt by Plaintiff.

7.    The Plaintiff has thus complied with all conditions precedent for filing suit and now timely files her Complaint.

**STATEMENT OF FACTS**

8.    The Plaintiff was hired by the Defendant Beaufort County as an Administrative Assistant in 2006. During the first ten years of her job, she was assigned to assist the Clerk of County Council.

9.    During the course of her employment, the Plaintiff performed her job in a satisfactory manner.

10.    On September 1, 2016, Plaintiff took over the position of Clerk of Council.  Around this time, Plaintiff began experiencing unwelcomed touching and was subjected to harassing comments related to Plaintiff's sex.

11.    A County Councilman, Gerald Dawson (hereinafter "Dawson"), made repeated unwelcomed sexual comments to Plaintiff and touched Plaintiff inappropriately on multiple occasions.

2

12.     Plaintiff made Dawson aware that the behavior was unwelcome and inappropriate.  She feared that reporting the actions would lead to retaliation, especially in the form or her termination, so she initially attempted to deflect and repel the advances and comments of Dawson without making management aware of the issues.

13.     After a period of time, the harassment became too much for Plaintiff to bear.  She had suffered several stress related maladies, including being hospitalized for chest pain after one instance of Dawson's advances.  Left with no other recourse, Plaintiff was believed she could no longer continue in her position with Defendants.  On April 5, 2018, she reported to Josh Gruber (hereinafter "Gruber"), the interim County Administrator, that she was resigning her position due to the harassment of Dawson.

14.    Plaintiff was then subjected to multiple instances of retaliation leading, ultimately, to her constructive termination after she made the complaint to Gruber.  Her complaints were shared internally and Plaintiff rapidly became an office pariah.

15.     The Plaintiff's complaints included, but were not limited to, the following:

When Plaintiff first interviewed for the position of Clerk to Council, Dawson insinuated that the Council did not want to hire her based on her marital status – in that she was a single mother who did not have assistance in the home.  Plaintiff was highly offended by this insinuation.  During the later investigation, it was intimated that Dawson had made up this topic, making it more clear that he made the comments to intimidate or dress-down Plaintiff.

Plaintiff received several phone calls from Dawson on her personal cell phone both during and after working hours asking her to take specific actions.  Dawson asked her to step out of the building to discuss private matters with him that were not within Plaintiff's scope of duties in her position.  Some of these matters included Dawson's unhealthy curiosity into the hring

process for the next County Administrator and asking for detailed personal information on Council Chair, Paul Sommerville (hereinafter "Sommerville") and Gruber.

On March 5, 2017, Dawson texted Plaintiff requesting that she download and install the "Marco Polo" application on her cellular phone. This is an app that allows users to share short videos to other devices with the same application. Dawson's stated reason for this request was that he wanted to "show her something." Plaintiff did not act on the request.

Dawson touched Plaintiff inappropriately within the office on multiple occasions. First, he began hugging her without her consent. This occurred numerous times and Plaintiff made it clear that the touching made her uncomfortable. Next, Dawson attempted to kiss Plaintiff on the lips on at least two occasions. As Plaintiff was leaving the office on March 22, 2017, Dawson hugged Plaintiff and leaned in to attempt to kiss her on the lips. Plaintiff pulled back and dodged the kiss, with it ultimately landing on her forehead. Plaintiff became panicked over this action and was terribly disturbed by it.

Dawson very often made comments about Plaintiff's appearance and her clothing that were highly suggestive in nature. These comments were unprovoked and unwanted, and Plaintiff believed that she made that fact clear to Dawson.

On or around March 30, 2018, Dawson mentioned Gruber's wife, also named "Ashley", to Plaintiff after her attendance at the March 26, 2018 County Council meeting. Dawson asked Plaintiff if she believed she "looked as good as" Gruber's wife and made several other salacious comments comparing Plaintiff's physical appearance to Ashley Gruber.

16.     After Plaintiff's complaints to Gruber, news of the harassment spread throughout the office of Defendants very quickly.

4

17.    An investigation into Plaintiff's complaints proceeded after April 6, 2018. The investigation found that nothing could be done about Dawson because he was an elected official.

18.    During the period of the investigation, it was made clear to Plaintiff that she was no longer welcome in the office.

19.    Plaintiff quickly became ostracized by individuals in the office and co-workers who were formerly friendly with her ignored her presence entirely.

20.    Dawson is an African American man.  He has a powerful sphere of influence Beaufort County.  While Plaintiff was met with sympathy from some within Beaufort County government, the African American community in and round her employment became instantly cold and distant from her.  African American friends that she had for many years ignored her in work and social situations.   A Caucasian woman complaining of the harassment an African American man led to Plaintiff becoming an outcast.

21.    Faced with the inevitable prospect of being returned to an incredibly hostile and inappropriate environment in close proximity of the individual who had sexually harassed her, Plaintiff had no choice but to resign from her position with Defendant.

22.    Plaintiff has lost significant salary and benefits due to the treatment of Defendant.

## FIRST CAUSE OF ACTION: TITLE VII

### Sex Discrimination/Retaliation

23.    The Plaintiff re-alleges and incorporates each and every allegation set forth above as if repeated verbatim.

24.    Defendant is an employer subject to Title VII of the Civil Rights Act of 1964, as amended in 1991.

25.     At all times during her employment, Plaintiff was performing all of her duties in a satisfactory manner to the legitimate expectations of the Defendant.

26.     Plaintiff suffered harassment of a sexual nature and retaliation based on her reports of the harassment.

27.     Defendant's conduct, which constructively terminated her employment because of her sex, constitutes a violation of Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et. seq*.

28.     Defendant's proffered reasons for the treatment of Plaintiff are a pretext for discrimination based upon the Plaintiff's sex and retaliation based on her protected act of reporting the discrimination.

29.     As a result of these unlawful violations by the Defendant, the Plaintiff has suffered lost wages and benefits, bonuses and other compensation, and has incurred attorney's fees and costs.

30.     Further, because of Defendant's conduct, Plaintiff has suffered and endured humiliation, damage to her reputation, loss of esteem in the community and is entitled to compensatory damages.

31.     Defendant's conduct constitutes malicious, reckless and/or intentional violations of Plaintiff's rights under Title VII, entitling her to punitive damages.


**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that the following relief by granted against Defendant:

   a. All relief available under Title VII and the other claims pled herein, including but not limited to, an appropriate amount of back wages, bonuses and benefits

to be established at trial; compensatory damages, actual and exemplary damages, punitive damages, pre-judgment interest, costs and attorney's fees.

b.  Reinstatement to her position formerly occupied in Defendant's employ, or if reinstatement is inappropriate, for an appropriate amount of front pay, benefits and bonuses to be established at trial;

c.  Any and all further relief as appears just and proper to this Court.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL MATTERS THUS TRIABLE**

**GIBBS & HOLMES**

By:  s/ Allan R. Holmes
Allan R. Holmes (Fed ID # 1925)
Timothy O. Lewis (Fed. ID # 9864)
171 Church Street, Suite 110
Charleston, SC 29401
(843) 722-0033
aholmes@gibbs-holmes.com

May 24, 2019

Charleston, South Carolina